IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

BINYAMIN I. EFREOM; MARILYN C. DiSTEFANO; )
SUSAN L. HARTNETT; ADRIENNE R. DIMEO; )
MARY G. KENNEDY; CYNTHIA J.. RONDEAU; )
MARY O'CONNELL McKENNA; TIMOTHY H. )
MURPHY; DENNIS F. ZIROLI; ANNMARIE BOLVIN; )
WILLIAM P. BERUBE; JOSEPH F. CLIFFORD III; )
ANTONETTA R. MELLO; MAUREEN RITA )
VAVOLOTIS; WILLIAM BLAIR; PATRICIA E. )
GIAMMARCO; BARBARA A. MOUSSALLI; SANDRA )
A. CURRAN; KATHLYNE E. WALSH; WILLIAM H. )
FERGUSON; CAROL SCHNEIDER; JOANNE A. )
MATISEWSKI; LAURIE A. SCIALABBA; JEAN )
PETISCE-LYNCH; ANTHONY T. BAGAGLIA; JOANN )
C. LOMBARDI; ANTHONY J. RICCI; JAMES E. )
BARDEN; NANCY A. LEMME; MARY F. SHERLOCK; )
PAMELA J. DELVECCHIO; JANET KELLER; DEAN L. )
LEES; ROBERT M. PESATURO, JR.; JANICE M. )
COLERICK; JAMES H. COX; KATHLEEN A. )
CRESCENZO; SANDRA L. McCULLOUGH; MICHAEL )
N. SENERCHIA; KAREN M. TANNER, NORMA JEAN )
PALAZZO; DAVID GOODMAN; ROBERT J. DiMAIO; )
FRANCESCA BEDELL; JAMES BEDELL; GREGORY )
MARCELLO; BRIAN KENNEDY; MARGARET )
HARRIS; MARY KATHERINE O'NEILL )
)
    VS: ) C.A. NO. 20-122
)
GINA RAIMONDO, in her capacity as Governor of the )
State of Rhode Island, and the EMPLOYEES' )
RETIREMENT SYSTEM OF RHODE ISLAND, by and )
through FRANK J. KARPINSKI, its Executive Director; )
and SETH MAGAZINER, in his capacity as Chairperson )
of the Retirement Board )

PRELIMINARY STATEMENT

1.    Plaintiffs each are individual state and municipal employees who retired prior to 2015 and have been, and continue to receive pension payments from the Employees' Retirement System of Rhode Island. The pension each Plaintiff was

to receive in the time leading up to their decision to leave public service included a cost-of-living adjustment ("COLA") of 3% of their annual pension such that the pension would keep pace with the rising cost of living.  Without the COLA, the fixed income pension benefit would have steadily diminished buying power in an environment of rising cost-of-living expenses.  Without the COLA, the pension benefit value of the Plaintiffs would continue to decline.

2. Upon information and belief, during the time period following the suspension of the Plaintiffs' COLAs, the State's revenues and expenditures continued to increase, effectively maintaining "current service level" funding (or greater) for most other State programs.

3. The General Assembly enacted, as part of the fiscal year 2016 Budget, pension changes which, among other things, substantially diminishes the Plaintiffs' COLAs until certain conditions are met.

## JURISDICTION

4. Jurisdiction over this action is conferred upon this Court by 28 U.S.C. § 1331, which provides for jurisdiction in the United States district courts over civil actions arising under the Constitution, laws or treaties of the United States, as well as 28 §§ 1343, 2201 and 2202.

5. This action is brought under 42 U.S.C. § 1983 to redress the deprivation of federal statutory and constitutional rights.

6. Venue is proper in this district pursuant to U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to this claim occurred within the judicial district of Rhode Island.

## PARTIES

7. Plaintiffs Binyamin I. Efreom; Marilyn C. DiStefano; Susan L. Hartnett; Mary G. Kennedy; Cynthia J. Rondeau; Mary O'Connell McKenna; Timothy H. Murphy; Dennis F. Ziroli; Annmarie Bolvin; William P. Berube; Joseph F. Clifford, III; Antonetta R. Mello; Patricia E. Giammarco; Sandra A. Curran; Kathlyne E. Walsh; William H. Ferguson; Joanne A. Matisewski; Laurie A. Scialabba; Anthony T. Bagaglia; Joann C. Lombardi; Anthony J. Ricci; James E. Barden; Nancy A. Lemme; Mary F. Sherlock; Pamela J. Delvecchio; Dean L. Lees; Robert M. Pesaturo, Jr.; Janice M. Colerick; James H. Cox; Kathleen A. Crescenzo; Michael N. Senerchia; Karen M. Tanner; Norma Jean Palazzo; Robert J. DiMaio; Francesca Bedell; James Bedell; Gregory Marcello; Brian Kennedy; Margaret Harris and Mary Katherine O'Neill are all residents of the State of Rhode Island.

8. Plaintiff David Goodman is a resident of Bonita Springs, Florida.

9. Plaintiff Adrienne R. DiMeo is a resident of Land O Lakes, Florida.

10. Plaintiff Janet Keller is a resident of Amherst, Massachusetts.

11. Plaintiff Barbara A. Moussalli is a resident of Attleboro, Massachusetts.

12. Plaintiff Maureen Rita Vavolotis is a resident of Rehoboth, Massachusetts.

13. Plaintiff Jean Petisce-Lynch is a resident of Seekonk, Massachusetts.

14. Plaintiff William Blair is a resident of Bridgewater Corners, Vermont.

15. Plaintiff Sandra A. McCullough is a resident of New Port Richey, Florida

16. Plaintiff Carol Schneider is a resident of Jensen Beach, Florida.

17.     The Defendant, the State Retirement Board, administers the State Employees' Retirement System of Rhode Island ("ERSRI").

18.     Rhode Island pools plan funds for investment purposes. The Defendant's Chair, the Rhode Island General Treasurer, is responsible for the systems investment decisions and setting asset allocation strategies.

19.     The Rhode Island General Treasurer, Seth Magaziner, sits as Chair of the State Retirement Board and this action is brought against him in his official capacity.

20.     The Governor, Gina Raimondo, is the Chief Executive Officer of the State, responsible for implementing all the laws of the State of Rhode Island and is sued in her official capacity.

## STATUTORY SCHEME

21.     Rhode Island Public Law Chapter 141 contains within it Article 21 relating to Pensions, enactment date June 30, 2015. The provisions of Article 21 include an amendment to R.I. General Laws § 36-8-1 adding: "'Funded Rate'" shall mean the ratio of actuarial value of assets to the actuarial liability consistent with the funding policy of the Retirement Board as defined in §36-8-4."

22.     Article 21 amends R.I. General Laws §36-10-35 to include subparagraph (h):

> "(h) This subsection (h) shall become effective July 1, 2015.
> (I)(A) As soon as administratively reasonable following the enactment of this subsection (h)(1)(A), a one-time benefit adjustment shall be provided to members and/or beneficiaries of members who retired on or before June 30, 2012, in the amount of 2% of the lesser of either the member's retirement allowance or the first twenty-five thousand dollars ($25,000) of the member's retirement allowance. This one-time benefit adjustment shall be provided without regard to the retiree's age or number of years since retirement.

4

  (B) Notwithstanding the prior subsections of this section, for all present and former employees, active and retired members, and beneficiaries receiving any retirement, disability or death allowance or benefit of any kind, the annual benefit adjustment provided in any calendar year under this section for adjustments on and after January 1, 2016, and subject to subsection (h)(2) below, shall be equal to (I) multiplied by (II):

(I) Shall equal the sum of fifty percent (50%) of (i) plus fifty percent (50%) of (ii) where: (i) Is equal to the percentage determined by subtracting five and one-half percent (5.5%) (the "subtrahend") from the five-year average investment return of the retirement system determined as of the last day of the plan year preceding the calendar year in which the adjustment is granted, said percentage not to exceed four percent (4%) and not to be less than zero percent (0%). The "five-year average investment return" shall mean the average of the investment returns of the most recent five (5) plan years as determined by the retirement board. In the event the retirement board adjusts the actuarially assumed rate of return for the system, either upward or downward, the subtrahend shall be adjusted either upward or downward in the same amount.

 (ii) Is equal to the lesser of three percent (3%) or the percentage increase in the Consumer Price Index for all Urban Consumers (CPI-U) as published by the U.S. Department of Labor Statistics determined as of September 30 of the prior calendar year. In no event shall the sum of (i) plus (ii) exceed three and one-half percent (3.5%) or be less than zero percent (0%).

(II) Is equal to the lesser of either the member's retirement allowance or the first twenty-five thousand eight hundred and fifty-five dollars ($25,855) of retirement allowance, such amount to be indexed annually in the same percentage as determined under subsection (h)(1)(B)(I) above.

The benefit adjustments provided by this subsection (h)(1)(B) shall be provided to all retirees entitled to receive a benefit adjustment as of June 30, 2012 under the law then in effect, and for all other retirees the benefit adjustments shall commence upon the third anniversary of the date of retirement or the date on which the retiree reaches his or her Social Security retirement age, whichever is later.

 (2) Except as provided in subsection (h)(3) of this section, the benefit adjustments under subsection (h)(1)(B) for any plan year shall be suspended in their entirety unless the funded ratio of the employees' retirement system of Rhode Island, the judicial retirement benefits trust and the state police retirement benefits trust, calculated by the system's actuary on an aggregate basis, exceeds eighty percent (80%) in which event the benefit adjustment will be reinstated for all members for such plan year.

In determining whether a funding level under this subsection (h)(2) has been achieved, the actuary shall calculate the funding percentage after taking into account the reinstatement of any current or future benefit adjustment provided under this section.

(3) Notwithstanding subsection (h)(2), in each fourth plan year commencing after June 30, 2012 commencing with the plan year ending June 30, 2016, and subsequently at intervals of four plan years:

 (i) A benefit adjustment shall be calculated and made in accordance with

5

subsection (h)(1)(B) above; and

(ii) Effective for members and/or beneficiaries of members who retired on or before June 30, 2015, the dollar amount in subsection (h)(1)(B)(II) of twenty-five thousand eight hundred and fifty-five dollars ($25,855) shall be replaced with thirty-one thousand and twenty-six dollars ($31,026) until the funded ratio of the employees' retirement system of Rhode Island, the judicial retirement benefits trust and the state police retirement benefits trust, calculated by the system's actuary on an aggregate basis, exceeds eighty percent (80%).
(i) Effective for members and or beneficiaries of members who have retired on or before July 1, 2015, a one-time stipend of five hundred dollars ($500) shall be payable within sixty (60) days following the enactment of the legislation implementing this provision, and a second one- time stipend of five hundred dollars ($500) in the same month of the following year. These stipends shall be payable to all retired members or beneficiaries receiving a benefit as of the applicable payment date and shall not be considered cost of living adjustments under the prior provisions of this § 36-10-3."

23. Article 21 amends R.I. General Laws §16-16-40 by adding subparagraph (f) as

follows:

"(f) This subsection (f) shall become effective July 1, 2015.
(1)(A) As soon as administratively reasonable following the enactment into law of this subsection (f)(1)(A), a one-time benefit adjustment shall be provided to teachers and/or beneficiaries of teachers who retired on or before June 30, 2012, in the amount of two percent (2%) of the lesser of either the teacher's retirement allowance or the first twenty-five thousand dollars ($25,000) of the teacher's retirement allowance. This one-time benefit adjustment shall be provided without regard to the retiree's age or number of years since retirement.
(B) Notwithstanding the prior subsections of this section, for all present and former teachers, active and retired teachers, and beneficiaries receiving any retirement, disability or death allowance or benefit of any kind, the annual benefit adjustment provided in any calendar year under this section for adjustments on and after January 1, 2016, and subject to subsection (f)(2) below, shall be equal to (I) multiplied by (II):
(I)     Shall equal the sum of fifty percent (50%) of (i) plus fifty percent (50%) of (ii) where: (i) Is equal to the percentage determined by subtracting five and one-half percent (5.5%) (the "subtrahend") from the five-year average investment return of the retirement system determined as of the last day of the plan year preceding the calendar year in which the adjustment is granted, said percentage not to exceed four percent (4%) and not to be less than zero percent (0%). The "five-year average investment return" shall mean the average of the investment returns of the most recent five (5) plan years as determined by the retirement board. In the event the retirement board adjusts the actuarially assumed rate of return for the system, either upward or downward, the subtrahend shall be adjusted either upward or downward in the same amount.

6

    (iii)    Is equal to the lesser of three percent (3%) or the percentage increase in the Consumer Price Index for all Urban Consumers (CPI-U) as published by the U.S. Department of Labor Statistics determined as of September 30 of the prior calendar year. In no event shall the sum of (i) plus (ii) exceed three and one-half percent (3.5%) or be less than (0%) percent.

(II) is equal to the lesser of either the teacher's retirement allowance or the first twenty-five thousand eight hundred and fifty-five dollars ($25,855) of retirement allowance, such amount to be indexed annually in the same percentage as determined under subsection (f)(1)(B)(I) above."

24. Article 21 amends R.I. General Laws §45-21-52 by adding subparagraph (d) as follows:

"(d) The benefit adjustments provided by this subsection (f)(1)(B) shall be provided to all retirees entitled to receive a benefit adjustment as of June 30, 2012, under the law then in effect, and for all other retirees the benefit adjustments shall commence upon the third anniversary of the date of retirement or the date on which the retiree reaches his or her Social Security retirement age, whichever is later.

Except as provided in subsection (f)(3), the benefit adjustments under subsection (f)(1)(B) for any plan year shall be suspended in their entirety unless the funded ratio of the employees' retirement system of Rhode Island, the judicial retirement benefits trust and the state police retirement benefits trust, calculated by the system's actuary on an aggregate basis, exceeds eighty percent (80%) in which event the benefit adjustment will be reinstated for all teachers for such plan year.

In determining whether a funding level under this subsection (f)(2) has been achieved, the actuary shall calculate the funding percentage after taking into account the reinstatement of any current or future benefit adjustment provided under this section.

(2) Notwithstanding subsection (f)(2), in each fourth plan year commencing after June 30, 2012, commencing with the plan year ending June 30, 2016, and subsequently at intervals of four plan years: (i) A benefit adjustment shall be calculated and made in accordance with subsection (f)(1)(B) above; and (ii) Effective for teachers and/or beneficiaries of teachers who retired on or before June 30, 2015, the dollar amount in subsection (f)(1)(B)(II) of twenty-five thousand eight hundred and fifty-five dollars ($25,855) shall be replaced with thirty-one thousand and twenty-six dollars ($31,026) until the funded ratio of the employees' retirement system of Rhode Island, the judicial retirement benefits trust and the state police retirement benefits trust, calculated by the system's actuary on an aggregate basis, exceeds eighty percent (80%).

(3) Effective for teachers and/or beneficiaries of teachers who have retired on or before July 1, 2015, a one-time stipend of five hundred dollars ($500) shall be payable within sixty (60) days following the enactment of the legislation implementing this provision, and a second one- time stipend of five hundred

7

dollars ($500) in the same month of the following year. These stipends shall be payable to all retired teachers or beneficiaries receiving a benefit as of the applicable payment date and shall not be considered cost of living adjustments under the prior provisions of this § 16-16-40."

25. Article 21 amends R.I. General Laws 45-21-52 by adding subparagraph (d) as follows:

"(d)  This subsection (d) shall become effective July 1, 2015.
(1)(A) As soon as administratively reasonable following the enactment into law of this subsection (d)(1)(A), a one-time benefit adjustment shall be provided to members and/or beneficiaries of members who retired on or before June 30, 2012, in the amount of two percent (2%) of the lesser of either the employee's retirement allowance or the first twenty-five thousand dollars ($25,000) of the member's retirement allowance. This one-time benefit adjustment shall be provided without regard to the retiree's age or number of years since retirement.

(B) Notwithstanding the prior subsections of this section, for all present and former employees, active and retired employees, and beneficiaries receiving any retirement, disability or death allowance or benefit of any kind by reason of adoption of this section by their employer, the annual benefit adjustment provided in any calendar year under this section for adjustments on and after January 1, 2016, and subject to paragraph (d)(2) below, shall be equal to (I) multiplied by (II):

(I) Shall equal the sum of fifty percent (50%) of (i) plus fifty percent (50%) of (ii) where: (i) Is equal to the percentage determined by subtracting five and one-half percent (5.5%) (the "subtrahend") from the five-year average investment return of the retirement system determined as of the last day of the plan year preceding the calendar year in which the adjustment is granted, said percentage not to exceed four percent (4%) and not to be less than zero percent (0%). The "five-year average investment return" shall mean the average of the investment returns of the most recent five (5) plan years as determined by the retirement board. In the event the retirement board adjusts the actuarially assumed rate of return for the system, either upward or downward, the subtrahend shall be adjusted either upward or downward in the same amount.

(ii) Is equal to the lesser of three percent (3%) or the percentage increase in the Consumer Price Index for all Urban Consumers (CPI-U) as published by the U.S. Department of Labor Statistics determined as of September 30 of the prior calendar year.

In no event shall the sum of (i) plus (ii) exceed three and one-half percent (3.5%) or be less than zero percent (0%).
(I) Is equal to the lesser of either the member's retirement allowance or the first twenty- five thousand eight hundred and fifty-five dollars ($25,855) of retirement allowance, such amount to be indexed annually in the same percentage as determined under subsection (d)(1)(B)(I) above.

The benefit adjustments provided by this subsection (d)(1)(B) shall be provided to all retirees entitled to receive a benefit adjustment as of June 30,

8

2012 under the law then in effect, and for all other retirees the benefit adjustments shall commence upon the third anniversary of the date of retirement or the date on which the retiree reaches his or her Social Security retirement age, whichever is later; or for municipal police and fire retiring under the provisions of § 45-21.2- 5(b)(1)(A), the benefit adjustment provided by this paragraph shall commence on the later of the third anniversary of the date of retirement or the date on which the retiree reaches age fifty-five (55); or for municipal police and fire retiring under the provisions of § 45-21.2-5(b)(1)(B), the benefit adjustment provided by this paragraph shall commence on the later of the third anniversary of the date of retirement or the date on which the retiree reaches age fifty (50).

(2) Except as provided in subsection (d)(3), the benefit adjustments under subsection (d)(1)(B) for any plan year shall be suspended in their entirety for each municipal plan within the municipal employees retirement system unless the municipal plan is determined to be funded at a funded ratio equal to or greater than eighty percent (80%) as of the end of the immediately preceding plan year in accordance with the retirement system's actuarial valuation report as prepared by the system's actuary, in which event the benefit adjustment will be reinstated for all members for such plan year.

In determining whether a funding level under this subsection (d)(2) has been achieved, the actuary shall calculate the funding percentage after taking into account the reinstatement of any current or future benefit adjustment provided under this section.

(3) Notwithstanding subsection (d)(2), in each fourth plan year commencing after June 30, 2012 commencing with the plan year ending June 30, 2016, and subsequently at intervals of four plan years: (i) A benefit adjustment shall be calculated and made in accordance with subsection (d)(1)(B) above; and (ii) Effective for members and/or beneficiaries of members who retired on or before June 30, 2015, the dollar amount in subsection (d)(1)(B)(II) of twenty-five thousand eight hundred and fifty-five dollars ($25,855) shall be replaced with thirty-one thousand and twenty-six dollars ($31,026) until the municipal plan's funded ratio exceeds eighty percent (80%)."

26. Article 21 amends other calculations and provides effective dates and other provisions and are referenced generally herein.

## FACTUAL AND PROCEDURAL HISTORY
## EMPLOYEES' RETIREMENT SYSTEM OF THE STATE OF RHODE ISLAND ("ERSRI")

27. ERSRI was created by legislation and is a mandatory pension plan, a contributory pension plan, and a defined-benefit pension plan managed by the Retirement Board.

9

28. The Retirement Board has a fiduciary duty to the Plaintiffs, as beneficiaries of ERSRI.

29. Upon information and belief, the ERSRI, prior to July 1, 2012, required all State-employee Plaintiffs to contribute 8.75% of their annual compensation to the ERSRI.

30. Upon information and belief, the ERSRI, prior to July 1, 2012, required all public-school-teacher Plaintiffs to contribute 9.5% of their annual compensation to the ERSRI.

31. In consideration of the Plaintiffs' respective contribution(s) to the ERSRI, each Plaintiff was and is entitled to payment of a fixed retirement allowance (the "Allowance") upon the Plaintiff's reaching statutorily-prescribed age and/or service requirements.

32. Upon information and belief, State law provided and the State promised all of the Plaintiffs, upon retirement, a three-percent compounded cost-of-living retirement adjustment (the "COLA" or "COLAs") with respect to and/or as part of the Allowance for the duration of the Plaintiffs' respective lives.

33. Upon information and belief, the State's provision, and the Plaintiffs' obtainment, of the COLAs was a direct result of the Plaintiffs' agreement to forego other benefits and/or substantial compensation.

34. The inclusion of the COLAs in and/or with respect to the Plaintiffs' respective Allowances comprised a substantial portion of the respective Plaintiffs' employment agreements with the State.

35. The Plaintiffs undertook and/or forewent several and substantial acts, omissions and decisions (including, without limitation, the decision to retire) in reliance on

the terms and conditions of the Plaintiffs' respective employment agreements, which agreements entitled the Plaintiffs to receive the Allowances, including annual COLAs, for the duration of the Plaintiffs' respective lives.

36. The Defendants did not, upon or at any time prior to the Plaintiffs' retirement, represent to the Plaintiffs that their respective Allowances and/or COLAs could or would ever be reduced, suspended or eliminated during the balance of the Plaintiffs' lives.

37. The Defendants, by and through their employees and/or agents, calculated the projected COLA-adjusted pension payments retirees could expect to receive as part of the retirement process.

38. Article 13 of Chapter 141 of the Public Laws of 2015 contained a provision striking language requiring excess general revenues to be transferred to the Employees Retirement Systems of the State as follows:

"Section 2. Section 35-6-1 of the General Laws in Chapter 35-6 entitled "Accounts and Control" is hereby amended to read as follows:

(d) Upon issuance of the audited financial statement, the controller shall transfer all general revenues received in the completed fiscal year, net of transfer to state budget reserve and cash stabilization account as required by § 35-3-20, in excess of those estimates adopted for that year as contained in the final enacted budget to the employees' retirement system of the State of Rhode Island as defined in § 36-8-2."

The foregoing change is material to the pension fund and was absent from the term sheet of the Settlement Agreement, which is Exhibit B thereof.

### RHODE ISLAND RETIREMENT SECURITY ACT OF 2011 ("RIRSA") HISTORY

39. On or about November 18, 2011, RIRSA was enacted.

40. RIRSA suspended the Plaintiffs' pre-existing COLA payment.

11

41. Pursuant to RIRSA, the Plaintiffs shall not receive the annual COLAs, which the State was required to provide and did promise to the Plaintiffs upon the Plaintiffs' respective retirement(s), unless and until the ERSRI reaches eighty-percent funding.

42. The suspension of the Plaintiffs' receipt of the COLAs, pursuant to RIRSA, has substantially diminished, and continues to substantially diminish, the amount of the Plaintiffs' respective Allowances.

43. RIRSA did not permit full restoration of the Plaintiffs' respective COLAs in the amounts and/or with the frequency which the State was required to and did promise to the Plaintiffs upon the Plaintiffs' respective retirement(s).

44. RIRSA provided that, unless and until the ERSRI reaches eighty-percent funding, the Plaintiffs shall receive a COLA only once every five years.

45. RIRSA provided that, in the event that the ERSRI reaches eighty-percent funding, the non-compounded COLAs provided to the Plaintiffs shall range between zero and four percent of a greatly diminished base.

46. Employees and retired members sued the State because of the provisions of RIRSA. That suit resulted in a Class Action Settlement. Public Law 141, Article 21, followed that litigation.

47. RIRSA'S provisions of 2015, are replaced and amended by Public Law 141 Article 21.

48. Some and/or all of the Plaintiffs, upon information and belief, became aware of a proposed settlement agreement in the Suit on or about or after February 14, 2015 (the "Proposed Settlement"), and were nevertheless included in the class action by order of the Superior Court in Providence County.

49. According to the stated Proposed Settlement then, upon satisfaction of certain conditions, the Plaintiffs would be mandated to become members of one of five separate classes, to wit, "Class (v)," in a class-action lawsuit (the "Class-Action Suit").

50. According to the Proposed Settlement at the time, Class (v) in the Class-Action Suit was to be comprised of all retirees, regardless of the date(s) of retirement, who were eligible to receive a retirement benefit from the ERSRI.

51. According to the Proposed Settlement, Class (v) purported to include individuals in the Class-Action Suit who have had no representation or involvement in the Suit prior to the prospective class certification.

52. Following class certification, the Proposed Settlement purported to bind members of all classes, including Class (v), from pursuing their own claim(s) or individual interests.

53. The Settlement Agreement eventually, as approved, was subject to a "term sheet"; however, there are provisions in the legislation which are not set out in the term sheet, including, but not limited to, the calculation of the annual benefit adjustment for any calendar year shall include in its calculation a "five-year average investment return" which shall mean the average of the investment returns of the most recent five (5) plan years as "determined by the Retirement Board". This discretionary language was not included in the term sheet of the Settlement Agreement. The discretionary feature was not disclosed in the term sheet. Further, the "Funded Rate" as described in Paragraph 21 above is subject to the "funding policy" of the Retirement Board as defined in § 36-8-4, was similarly not described.

## FIRST CLAIM

## VIOLATION OF CONSTITUTIONAL RIGHTS – DUE PROCESS

54. Defendants' policies, practices and procedures pursuant to implementation of the provisions of 2015 Public Laws of Rhode Island § 141, Article 21, have violated and will continue to violate the Due Process Clause of the Fifth and Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983, and the rights of the Plaintiffs therein.

## SECOND CLAIM

## VIOLATION OF CONSTITUTIONAL RIGHTS
## UNDER THE CONTRACTS CLAUSE
## ARTICLE 5, SECTION 10

55. Each of the Plaintiffs entered into an agreement with the State with respect to the State's provision of a mandatory, contributory and defined-benefit pension plan and/or benefits, including, without limitation, the Allowance and COLA, to each of the Plaintiffs, in exchange for Plaintiff's respective performance of certain duties as public-school teachers and/or employees of the State (the "Agreement").

56. The State breached the terms and conditions of the Agreement, including, without limiting the generality of the foregoing, those terms and conditions requiring the provision of a mandatory, contributory and defined-benefit pension plan and/or benefits, including the Allowance and COLA, to each of the Plaintiffs.

57. The Plaintiffs have sustained and continue to sustain substantial damages, as well as costs, expenses and attorney's fees, as a proximate result of the foregoing breach(es) of the State of the Agreement(s).

58. Plaintiffs need injunctive relief in payment or the Plaintiffs will continue to sustain

substantial damages as a proximate result of the ongoing breach(es) of the Agreement(s) by the State.

59. The provisions of the United States Constitution provide that "no state shall enter in any… law impairing the obligation of contract."  Public Law of 2015, Section 141, Article 21, is just such a law.

60. The Public Law aforesaid, is not reasonable as applied to Plaintiffs as the provision allowing for cost of living increases is so dependent on positive and discretionary actions from the State Defendants, which they are not taking.

61. The General Treasurer of the State of Rhode Island released a report quoted in the <u>Providence Journal</u> on December 18, 2019, stating as fact that the Pension Fund herein will not reach the 80% funding until 2031, after which a greatly diminished cost of living increase could at least begin.

62. The average age currently of the Plaintiffs is in excess of seventy years.  The approximate eleven years before any adjustment for the cost of living leaves the Plaintiffs to continuing reduction in buying power and value and, in light of mortality, elimination of meaningful opportunity to benefit from the said provision.

63. The Defendants, notwithstanding the language of the legislation aforesaid allowing resumption of regular COLA payments following the attainment of 80% funding, continually propose and take actions in pursuit of other policies and agendas which render it unfeasible for the Defendants to meaningfully attain the 80% funding level.

## THIRD CLAIM

### VIOLATION OF CONSTITUTIONAL RIGHTS REGARDING THE TAKING CLAUSE OF THE FIFTH AMENDMENT AND THE FOURTEENTH AMENDMENT

64. Defendants' polices, practices and procedures in implementation of the provisions of the 2015 Public Laws of Rhode Island §141, Article 21, has violated and will continue to violate the Fifth and Fourteenth Amendment to the United States Constitution, inasmuch as they impair significant property rights of the Plaintiffs; constitute a regulatory taking, unfairly and unreasonably place the burden of preceved alternative legislative policies, desires and choices of the Plaintiffs, all in violation of the Taking Clause of the United States Constitution.

### FOURTH CLAIM

65. The within action is brought as the 2015 Public Laws of Rhode Island, Article 21, constitutes a new law which came into existence following fairness hearing litigation concerning the Settlement Agreement and the State Court Class Action and was not the subject of the Plaintiffs' original action in the State Superior Court, Kent KC-14-345, or the onset or litigation of State Class Action Suit, PC-16-1468, but was the means to implement the Settlement Agreement. <u>Gulf of Maine Fisherman's alliance v. Daley</u>, 292 F.3d 84 (1st Cir. 2002).

66. The implementation against the interests of the Plaintiffs of this pension law is directly violative of the Plaintiffs' rights and privileges under the United States Constitution.

67. The Defendants have reasonable alternatives including, without limiting the generality of the foregoing, general obligation bonding authority, and an asset reallocation which could have been used to make the Plaintiffs whole. <u>United States Trust & Company of New York v. New Jersey</u>, 431 U.S. 1, 97 S. Ct. 1505, 52 L. Ed 2d 92 (1977).

## FIFTH CLAIM

### RIGHT TO ASSEMBLE, PETITION FOR REDRESS OF GRIEVANCES AND FREEDOM OF SPEECH VIOLATED

68.  The rights of the Plaintiffs to freedom of speech and to petition the Government were violated by the actions of the Defendants given the language in the Settlement Agreement, the subject of the State Class Action Suit, banning the Plaintiffs from advocating for pension rights or petitioning their legislators regarding pending legislation in violation of the First Amendment and Fourteenth Amendment of the U.S. Constitution.

## REQUEST FOR RELIEF

WHEREAS, Plaintiffs respectfully ask that this Court enter judgment in favor of Plaintiffs and the class they represent, as follows:

A.  Assume jurisdiction of this matter

B.  Declare that Defendants' policies and practices implementing the legislation denying cost of living raises violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

C.  Declare that Defendants' policies and practices implementing the legislation denying cost of living raises violates the Contracts Clause, Article 5, Section 10 thereof of the United States Constitution.

D.  Declare that Defendants' policies and practices implementing the legislation denying cost of living raises violates the Taking Clause of the Fifth Amendment and Fourteenth Amendment to the United States Constitution.

E.  Declare that Defendants' policies and practices implementing the legislation denying cost of living raises violates the Rights and Privileges under the

United States Constitution.

F. Declare that Defendants' policies and practices implementing the legislation denying cost of living raises violates the Plaintiffs' Right to Free Speech and to Petition the Government under the First Amendment and the Fourteenth Amendment of the United States Constitution.

G. Award judgment for the Plaintiffs and each of them for monetary damages sufficient to make whole the Plaintiffs for the taking of the Plaintiffs' property without compensation.

H. Award the Plaintiffs, and each of them, monetary charges sufficient to make whole the Plaintiffs for damages they have sustained for the Defendant's breach of contract.

I. Temporarily, preliminarily and permanently enjoin Defendants from implementing the legislation identified herein denying Plaintiffs' cost of living increases in their pensions and honor the commitments made to the Plaintiffs prior to their retirements.

J. Award Plaintiffs compensatory damages for all prior periods affected by the implementation of 2015 Public laws of Rhode Island 141, Article 21, as the same existed at the time of the Plaintiffs' retirement.

K. Award Plaintiffs litigation costs and reasonable attorney's fees, pursuant to 42 U.S.C. § 1988.

L. Grant such other, further or different relief as the Court may deem just and proper.

Respectfully submitted,

/s/ George J. West, Esq.
George J. West, Esq.  #3052
George J. West & Associates
One Turks Head Place, Ste. 312
Providence, RI 02903
Tel. 401-861-9042
Fax 401-861-0330.

## Jury Trial Demand

Plaintiffs in the above-entitled matter demand a trial by jury of all issues so triable in the matter, under the provisions of Rule 38(b) of the Federal Rules of Civil Procedure and respectfully request that this matter be placed on the jury docket.

Dated March 11, 2020

/s/ George J. West, Esq.
George J. West, Esq.  #3052

19